IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA A. SANFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:13CV153-MHT |
| | ) | |
| SCA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff asserts a claim of retaliatory discharge against her former employer, SCA, Inc. ("SCA"), pursuant to 42 U.S.C. § 1981.  (See Docs. ## 1, 4, 9).  She alleges that she confronted defendant's production supervisor, Toronsa Isom, about Isom's unfair treatment of African American employees in relation to "employees of Mexican, Caucasian, and Indian descent" and that SCA terminated her employment in retaliation for this complaint.  (Doc. # 1, p. 3). This action is presently before the court on defendant's motion for summary judgment.  (Doc. # 30).  More than a month after the dispositive motion deadline, and near the deadline set by the court for plaintiff's response to summary judgment, plaintiff filed a document styled as an "Opposing Motion for Defendant's Summary Judgment." (Doc. # 35). The court entered an order construing the document as plaintiff's response to defendant's motion for summary judgment.  (Doc. # 37).[1]  Upon consideration of the motion, plaintiff's

_____

[1]  Plaintiff did not file an objection to this order, and the "notice" she filed thereafter further confirms that plaintiff intended the document as her response to the pending motion for summary

response to the motion, and defendant's reply brief, the court concludes that the motion is due to be granted.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For summary judgment purposes, an issue of fact is "material" if, under the substantive law governing the claim, its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied. Kernel Records Oy v. Mosley, 694 F.3d 1294, 1300 (11th Cir. 2012), cert. den., 133 S.Ct. 1810 (2013). If the movant adequately supports its motion, the burden shifts to the opposing party to establish – "by producing affidavits or other relevant and admissible evidence beyond the pleadings" – specific facts raising a genuine issue for trial. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 (11th Cir. 2011); Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010); Fed. R. Civ. P. 56(c)(1)(A). "All affidavits [and declarations] must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence[.]" Josendis, 662 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). The court views the evidence and all reasonable factual inferences in the light most favorable to the nonmovant. Miller's Ale House, Inc. v. Boynton Carolina Ale House,

---

judgment. (See Doc. # 38).

2

LLC, 702 F.3d 1312, 1316 (11th Cir. 2012).  However, "'[i]f no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted.'" Morton v. Kirkwood, 707 F.3d 1276, 1284 (11th Cir. 2013)(citation omitted).

## BACKGROUND[2]

SCA builds heaters and blowers for Hyundai and Kia automobiles. SCA hired plaintiff in 2006. After her first year of employment, she worked primarily on the blower line in SCA's Plant A.  In 2010, plaintiff began to have workplace conflicts with Rama Gonuguntla, a co-worker.  Gonuguntla, who is from India, worked at the blower line station immediately before plaintiff's work station. In August 2010, Gonuguntla complained to Priscilla Dismukes – then SCA's Human Resources Manager – about plaintiff's "'picking on her'" and making an offensive statement. Dismukes spoke with plaintiff later that day about Gonuguntla's complaints, and plaintiff reported that Gonuguntla held parts back from her to hold up the line.  Dismukes told both of them, individually, that they did not have to like each other but they had "to be professional at work and work together to get the job done." Toronsa Isom, the plant supervisor over both plaintiff and Gonuguntla, determined that plaintiff's complaints that Gonuguntla was holding parts back and not placing them close enough to plaintiff were unfounded, and that Gonuguntla was holding parts that were very

---

[2]  As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

hot and had to cool before being passed on.  Although Isom explained this conclusion to plaintiff, plaintiff continued to complain to Isom about Gonuguntla's holding back parts.  In December 2010, plaintiff and Gonuguntla argued after Gonuguntla turned off her machine thirty minutes early and refused plaintiff's demands that she turn it back on.  Thereafter, Gonuguntla began to slam parts down noisily.  Plaintiff complained to Isom, and Isom asked Gonuguntla to set the parts down gently.  Plaintiff told a coworker, Chris Johnson, that she "felt like" slapping and shaking Gonuguntla; she also told coworkers that Gonuguntla's actions were "evil" and "devilish."  In March 2011, plaintiff told Isom that she wanted Isom to talk to Gonuguntla about slamming down parts; thereafter, plaintiff was called into a meeting with Dismukes and Isom.  Dismukes told plaintiff that they were not going to discuss the issue about Gonuguntla's part-slamming.  Instead, Dismukes told plaintiff that if she and Gonuguntla could not figure out how to work together, one or both of them might be terminated.  According to plaintiff, Dismukes said, "[W]e're not going to move y'all.  Y'all are going to have to work together and get along" and, also, "[I]f I hear anything else that's going on with you and Rama, I'm going to have to let you go."  During this meeting, plaintiff told Isom, "[Y]ou are black, and ... you don't treat your own color fair. ...[E]very time something happened with a black person and with another color ... you don't – you're not fair."[3]

---

[3] Plaintiff's depo., p. 277. Dismukes and Isom dispute that plaintiff made any such statement. On the present motion, the court accepts plaintiff's testimony as true.

Thereafter, Dismukes interviewed plaintiff's coworkers and determined that plaintiff was allowing her conflict with Gonuguntla "to infect her working group."[4] On April 13, 2011, Gonuguntla was leaning on a wheeled table; Johnson pushed the table and Gonuguntla almost fell, but caught herself on another table. On April 14, 2011, Gonuguntla went to SCA's human resources office and met with Tracy Brooks, an Employee Relations Coordinator who reported to Dismukes. Gonuguntla complained that other employees harassed her daily. Brooks recorded the complaint in a memorandum, as follows:

> On 04/14/2011, Rama came to the HR office with a complaint. According to Rama, some of the employees are harassing her daily. She admitted that sometimes they joke around. Rama stated that Chris Johnson jokes around claiming that she, Rama, wants him. She said she did not take him serious and brushed it off. Chris, according to Rama, reached for her with both hands opened aiming at her breast. She said she immediately told him not to ever do that again or she will report it. She also stated that as a result of her and Barbara Sanford having issues, Chris instigates it daily. Chris has gone so far as to insult her religion, according to Rama, accusing her of acting the way she acts because she does not believe in God. Another incident occurred when she was leaning over the belt speaking to Eugene about some parts and Chris pushed the belt for no reason. She has accused Chris and Barbara of constantly talking about her, accusing her of not doing her job correctly and being disrespectful. She said they are spreading negative things to other people and she is tired of being treated like this. Other people on the line are witnesses.

(Brooks dec., ¶¶ 1-3 and Exhibit A). That day and the next, Brooks and Dismukes investigated Gonuguntla's complaints. Dismukes "determined that despite repeated previous warnings, Ms. Sanford had continued to belittle and harass Ms. Gonuguntla" and that

---

[4]  Dismukes summarized plaintiff's coworkers' statements in a March 27, 2011 memo to Daniel Yu, president of SCA. (Dismukes dec., ¶ 15 and Exhibit E). Plaintiff disagrees with her coworkers' reports and opinions but "can't say that they didn't" make the statements summarized by Dismukes. (Plaintiff's depo., pp. 252-55).

"Gonuguntla was a victim of this harassment and not an equal participant in it."[5]  On April

15, 2011, Dismukes fired plaintiff.  In a note she wrote that day, Dismukes indicated that she

had "[t]erminated Barbara Sanford for continuing to harass Rama – talking about her and

keeping things going.  She said if that is what y[']a[]ll want to do, ok.  I told her that she did

this by not changing her behavior after being warned.  We had discussed this issue before

repeatedly and she chose to continue this. We have witness statements that verify this

information." (Plaintiff's depo., pp. 72, 108-09, 112, 188-94, 203-07, 214-23, 232-34, 237,

241-44; Dismukes dec., ¶¶ 1, 6, 7, 8-10, 15-26 and Exhibits A, B, E, G, I ; Isom dec., ¶¶ 1-2,

5-7, 9, 13, 15 and Exhibit A).

## DISCUSSION

A race-based claim of retaliation is actionable under 42 U.S.C. § 1981.  CBOCS West,

Inc. v. Humphries, 553 U.S. 442, 457 (2008). Where – as here – the plaintiff's § 1981

retaliation claim rests on circumstantial evidence of unlawful intent, the court analyzes the

claim using the McDonnell Douglas/Burdine[6] burden-shifting framework. Brown v. Alabama

Department of Transportation, 597 F.3d 1160 (11th Cir. 2010); Standard v. A.B.E.L. Servs.,

---

[5]  Plaintiff disagrees with Dismukes' conclusion and disputes that she harassed Gonuguntla.
Plaintiff testified that Gonuguntla "might have made complaints but her complaints are incorrect.
She might have made them, though." (Plaintiff's depo., p. 268).  Plaintiff and Gonuguntla did not
speak to each other.  (Id., pp. 262, 268, 300).

[6]  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Department of Community
Affairs v. Burdine, 450 U.S. 248 (1981).

Inc., 161 F.3d 1318, 1330 (11th Cir.1998).[7]  To establish a *prima facie* case of retaliation, plaintiff must demonstrate that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) a causal relationship between her protected activity and the adverse action.  Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008).  If the plaintiff establishes a *prima facie* case, giving rise to a presumption of retaliation, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate reason for the materially adverse action.  Brown, 597 F.3d at 1181 (quoting Bryant v. Jones, 575 F.3d 1281, 1307-08 (11th Cir. 2009)).  If the defendant does so, the plaintiff may then demonstrate that the articulated reason is a pretext to mask the defendants improper motive. Id.

SCA contends that plaintiff cannot establish a *prima facie* case of retaliation because she cannot prove either protected conduct or causation.  (Doc. # 31, pp. 11-16).  To establish "statutorily protected activity[,]" a plaintiff claiming retaliation for opposing an unlawful employment practice must demonstrate that she believed, in good faith, that the challenged practice was unlawful and that this subjective belief was objectively reasonable in view of the facts, as measured against existing substantive law.  Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010)(citing Clover v. Total System Services, Inc., 176 F.3d 1346, 1351 (11th Cir. 1999)).  "To show causation, a plaintiff in a retaliation case need prove only

---

[7]  Section 1981 has "the same requirements of proof" as a race-based claim under Title VII; the same analytical framework applies to claims under either statute.  Standard, 161 F.3d at 1330.

that retaliatory animus was one factor in the adverse employment decision." <u>Brown</u>, 597 F.3d at 1182.  Close temporal proximity between protected activity and an adverse action may be sufficient to show a causal relationship.  <u>Shannon v. BellSouth Telecommunications, Inc.</u>, 292 F.3d 712, 716 (11th Cir. 2002).

SCA maintains that plaintiff held neither a subjective belief nor an objectively reasonable belief that Isom's conduct in favoring certain employees, either in general or over the plaintiff, constituted unlawful discrimination (Doc. # 31, pp. 13-15), and – even assuming protected activity – that plaintiff's intervening misconduct precludes her reliance on temporal proximity alone to establish the causation element (<u>id</u>., p. 16)(citing <u>Hankins v. AirTran Airways, Inc.</u>, 237 Fed. Appx. 513, 521 (11th Cir. 2007), and <u>Taylor v. CSX Transportation</u>, 418 F.Supp.2d 1284 (M.D. Ala. 2006)).  SCA further maintains that, even if plaintiff could establish a *prima facie* case of retaliatory termination, she cannot rebut the legitimate reason articulated by defendant for her termination. (Doc. # 31).  Plaintiff responds that she "complained and was later fired" and that defendant's own records demonstrate that "Christopher Johnson and Rama Gonu[g]untla had an altercation, not plaintiff."  (Doc. # 35).

The court need not determine whether plaintiff has established a *prima facie* case of retaliation because, even assuming that she has, she has not demonstrated pretext. The reason articulated by the decisionmaker for plaintiff's termination is that, despite previous warnings, plaintiff had continued to "harass Rama – talking about her and keeping things going." (Dismukes dec., ¶¶ 17-25 and Exhibit I).  Plaintiff claims that the evidence demonstrates that

8

she was not involved in the altercation between Johnson and Gonuguntla.  (Complaint, ¶ 9; Doc. #35).  However, the reason advanced by defendant for plaintiff's termination is not that she was involved in the "table pushing" incident with Gonuguntla.  According to Brooks, Gonuguntla complained about Johnson's harassing her daily but also "accused Chris and Barbara of constantly talking about her, accusing her of not doing her job correctly and being disrespectful" and "spreading negative things to other people." (Brooks dec., ¶ 3 and Exhibit A).  Brooks reports that, in responding to Gonuguntla's complaint, she spoke with Isom "about the Rama-Barbara issue first." (Id.).[8]  The Eleventh Circuit instructs that, to demonstrate pretext, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it[.]" Chapman v. AI Transport, 229 F.3d 102, 1030 (11th Cir. 2000)(*en banc*).  Plaintiff has not done so.

Defendant does not claim that it terminated plaintiff for being involved in the altercation.  Thus, the unsworn written statement from Eugene Carlisle (Doc. #36-3) – which is not admissible on the present motion in any event – is irrelevant.  Bryant's statement – which is notarized but not sworn and, therefore, is also inadmissible – confirms that plaintiff

---

[8]  Isom states that, "[i]n 2011, Ms. Sanford's and Ms. Gonuguntla's co-workers told me that they were tired of the conflict. They described ... a setting where Ms. Sanford was daily saying to them, 'Look at her [Ms. Gonuguntla];' 'Look at what Rama is doing or not doing, or how she is doing it.'  It seemed to me that Ms. Sanford was instigating the conflict most of the time."  (Isom dec., ¶ 9).

and Gonuguntla "had words" and were not speaking *to* each other.  (Doc. # 36-2).[9]  Even if this statement were admissible, it does not impeach Dismukes' conclusion that plaintiff was talking *about* Gonuguntla and "keeping things going." The notarized but unsworn statement from Mechelle Walker does not go to the issue of pretext at all; it merely expresses her own dissatisfaction with Isom as a supervisor.  (Doc. # 36-1).

Of the evidence on which plaintiff relies in opposing summary judgment (see Doc. # 35, 36),[10] only that concerning Johnson's disciplinary history before plaintiff's termination (Doc. # 36-5 through #36-8) is both admissible and relevant.  However, it does not demonstrate a genuine dispute about whether defendant's stated reason for plaintiff's termination is pretextual.  Dismukes states that, "prior to Ms. Gon[u]guntla's April 2011 complaint about Mr. Johnson, we had not received similar complaints regarding Mr. Johnson."  (Dismukes dec., ¶ 21).  She further avers that:

> I decided to terminate Ms. Sanford and not Mr. Johnson because we had repeatedly warned Ms. Sanford that she needed to get along with Ms. Gonuguntla but she failed to do so.  By contrast this was Mr. Johnson's first warning.  Additionally, Ms. Gonuguntla admitted that she and Mr. Johnson had "joked around" sometimes, but she had never characterized her conflict with Ms. Sanford as "joking around."

(Id., ¶ 22).  Johnson's disciplinary file includes a written warning, dated October 27, 2010,

---

[9]  By order entered on October 1, 2013 (Doc. # 33), the court explained the requirements for responding to a motion for summary judgment.

[10]  Plaintiff cites none of the evidence filed by SCA.  (See Doc. ## 35, 36).

for making inappropriate comments to a co-employee "regarding sexual preference" after being asked to stop. (Doc. # 36-7). He also received a documented verbal warning for leaving his work station and changing the "schedule & WIP" board without permission in August 2006, and another verbal warning in February 2007 for failing to wear safety glasses and threatening to "plant" the manager who told him to do so "in this concrete." (Doc. # 36-7). Dismukes states that she decided to terminate plaintiff and not Johnson because: (1) "we had repeatedly warned Ms. Sanford that she needed to get along with Ms. Gonuguntla but she failed to do so[;]" (2) "[b]y contrast, this was Mr. Johnson's first warning[;]" and (3) Gonuguntla admitted that she had "joked around" with Johnson sometimes, but "had never characterized her conflict with Ms. Sanford as 'joking around.'" (Dismukes dec., ¶ 22). While Johnson's October 2010 warning was for harassing behavior, it did not involve Gonuguntla. Dismukes makes clear that she terminated plaintiff's employment because she determined that plaintiff had failed to heed previous warnings about maintaining a professional working relationship with Gonuguntla. (Id.; see also Dismukes dec., Exhibit I (Dismukes' April 15, 2011 note that she had "[t]erminated Barbara Sanford for *continuing to harass Rama* – talking about her and keeping things going. ... I told her that she did this by *not changing her behavior after being warned. We had discussed this issue before repeatedly and she chose to continue this*.")(emphases added)). Plaintiff points to no competent evidence of record that would permit a reasonable conclusion that the reason given by Dismukes for her decision to fire plaintiff is not the real reason. Because plaintiff

has failed to meet her burden of demonstrating a genuine issue of fact as to whether the reason articulated by defendant is a pretext to mask retaliation, SCA is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that defendant's motion for summary judgment (Doc. # 30) be GRANTED, and that summary judgment be entered in defendant's favor on plaintiff's sole remaining claim.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before March 18, 2014.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 4th day of March, 2014.

/s/ Susan Russ Walker

SUSAN RUSS WALKER

CHIEF UNITED STATES MAGISTRATE JUDGE